# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | | |
|---|---|---|
| MDSAVE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No.   6:21-cv-01338 |
| v. | ) | |
| | ) | |
| SESAME, INC., TRIPMENT, INC., and | ) | |
| GREEN IMAGING, LLC., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |

## COMPLAINT

Plaintiff MDSave Inc. ("MDSave"), by and through its counsel, hereby files this Complaint against Defendants Sesame, Inc. ("Sesame"), Tripment, Inc. ("Tripment"), and Green Imaging, LLC ("Green Imaging"), and alleges as follows:

## SUMMARY OF THE ACTION

1.      MDSave seeks emergency and permanent redress from Defendants' blatant ongoing theft and exploitation of its protected data, intellectual property, services, and goodwill, which has and continues to irreparably harm MDSave, and is in clear violation of the law, as set forth herein.

2.      Put simply, MDSave built its business the old-fashioned way: with ingenuity, time, money, and hard work. It brings this action because the three Defendants have decided to illegally pilfer and exploit MDSave's data and copy its patented technology, among other violations. In so doing, Defendants are wrongfully misappropriating and exploiting MDSave's protected data, falsely advertising their services by representing that they have relationships with doctors and hospitals when they do not, directly interfering with MDSave's relationships with its patients,

doctors, and hospitals, to the detriment of all three, and committing patent and trademark infringement.

3.    MDSave is an online marketplace for consumers to find high-quality healthcare at affordable, upfront rates—often well below the national average. To do so, the MDSave marketplace allows patients (and proxy purchasers) to acquire bundled medical services at pre-negotiated "all-in" prices from thousands of providers across the United States. In the emerging and complicated era of high-deductible insurance plans, giving patients and their employers the ability to shop for a bundled set of services with transparency and without hidden costs is a game changer. For example, an MDSave customer can acquire a colonoscopy, including facility fee, pathology fee, anesthesia, and the procedure itself, from a high-quality provider—usually at a substantial discount from what would otherwise be available—without worrying about any additional or hidden costs or the need for insurance. MDSave also specializes in providing bundled healthcare services so that patients and employers can pay a single, MDSave pre-negotiated reduced price for a multi-provider procedure such as a knee replacement, which would include the individual fees for the surgery, the anesthesia, the facility, and the physical therapy. The bundled services are represented by a purchase information record or persistent data record, hereafter called a "voucher," within a transaction information database. This model not only reduces costs but dramatically simplifies the process. In sum, MDSave's marketplace allows consumers to obtain important medical services from trusted providers across the country, including in areas under-served by high quality medical care or with large numbers of uninsured or underinsured consumers.

4.    But while the premise is straightforward, developing the technology and relationships required to make this work was anything but. As outlined below, it took MDSave

nearly a decade and tens of millions of dollars to build the technology and secure contracts with the providers and hospitals in its network. After years of research and relationship building, MDSave now has negotiated direct contractual agreements with thousands of healthcare providers to offer bundled medical services at agreed-upon reduced rates. Moreover, MDSave's technological innovations used to provide these services have been recognized in the many patents it has been awarded.

5.     MDSave first launched its website in 2013, and since then has experienced great growth. In 2015, MDSave raised more than $14 million dollars from investors and expanded services to 24 states. By 2018, MDSave expanded to a network of more than 200 hospitals across 29 states. Currently, MDSave operates in 36 states, offering more than 1,700 procedures and partnering with more than 300 hospitals across the country. The State of Texas is MDSave's biggest marketplace in terms of volume with 114,102 bundled services sold. MDSave does extensive business in the District of West Texas as well, having sold 19,987 bundled services there since July 2019. However, this success, and, indeed, MDSave's livelihood, is now threatened if Defendants' conduct is allowed to proceed.

6.     In or around November 2021, MDSave learned that three companies—Defendants Sesame, Tripment, and Green Imaging—were acting, both in concert and individually, to unlawfully appropriate MDSave's business, including by illegally scraping its website for protected data, infringing its trademarks and patents, and falsely and otherwise unlawfully competing against MDSave.

7.     Specifically, MDSave discovered that Sesame and Tripment had decided to enter MDSave's business by stealing data from MDSave's website and falsely representing that they have direct contractual relationships with MDSave's providers. Indeed, a review of the Sesame

and Tripment websites demonstrates that they wholesale copied, and are exploiting, MDSave's hard-earned and protected data, know-how, and reduced pricing for bundled services.

8.     This is abundantly clear because Sesame's website lists many of the same procedures from the same list of providers as those available on MDSave's website, including both imaging and non-imaging procedures. The same is true with respect to Tripment's website, though limited only to imaging procedures (e.g., MRIs, X-rays, and CAT scans) that Tripment also falsely represents are being provided by Defendant Green Imaging (a national medical imaging provider) when, in fact, they are being offered by other imaging providers with whom ***MDSave*** has a relationship and Tripment does not. Because MDSave researched and identified ***these specific providers*** and negotiated reduced, upfront rates for specific bundled procedures, there can be no doubt that Sesame and Tripment stole—wholesale—protected data from MDSave's website, such as the name and location of MDSave's healthcare partners, lists and descriptions of available bundled services and procedures, MDSave's negotiated prices, and other information essential to consumers when selecting healthcare.

9.     On information and belief, Defendants, collectively or individually, stole for their misuse MDSave's data through illegal "web scraping." To do so, they improperly accessed MDSave's website and utilized computer-implemented tools to comprehensively "scrape" and download MDSave's proprietary and protected data. MDSave expressly prohibits visitors to its website from engaging in this practice.

10.     Defendants are also using the proprietary pricing data MDSave generated through years of business development and market research. In so doing, they falsely represent that they have relationships with MDSave's healthcare providers when in fact they do not. They also use

the stolen data to price their own services and to negotiate their own contracts and rates with MDSave's partner providers.

11.    This is also when MDSave discovered Green Imaging's involvement with Sesame's and Tripment's wrongful conduct. Green Imaging recently asked MDSave to purchase large volumes of MDSave bundled healthcare services, which Green Imagining represented would be used exclusively with Green Imaging's own contracted self-insured employer customers. This was inaccurate. MDSave later discovered that Green Imaging was instead illegally reselling and passing off MDSave's services as its own, including to, among others, Sesame and Tripment. Indeed, not only have Sesame and Tripment purchased *MDSave vouchers* for specific bundled services from Green Imaging, which has illegally resold them, Sesame and Tripment are then illegally *reselling once again* these bundled healthcare services and passing those vouchers off to consumers as their own.

12.    In committing these actions, Green Imaging also improperly altered MDSave's vouchers to minimize references to MDSave and to make the vouchers appear as though the bundled healthcare services and rates were provided by Green Imaging. Green Imaging's brazen actions of passing off MDSave's bundled healthcare services, rates, and vouchers as its own, and altering or recreating vouchers in the process, have caused damaging confusion among MDSave's customers and healthcare partners.

13.    In sum, Defendants' actions have caused extraordinary harm to MDSave. Defendants' actions have caused MDSave to suffer lost sales, customers, and market share; have caused extensive and damaging confusion among MDSave's customers and healthcare partners, and deprived MDSave of significant growth opportunities, including, upon information and belief,

by misrepresenting MDSave's data and goodwill as their own to investors and the healthcare industry.

14.     MDSave has legally protectable interests in its data, technology, goodwill, and services, all of which Defendants have stolen and continue to exploit. Defendants must be immediately stopped and held liable.

## PARTIES

15.     Plaintiff MDSave is a corporation organized under Delaware law with its principal place of business in Brentwood, Tennessee.

16.     Upon information and belief, Defendant Sesame is a corporation organized under Delaware law with its principal place of business in New York, New York.

17.     Upon information and belief, Defendant Tripment is a corporation organized under Delaware law with its principal place of business in New York, New York.

18.     Upon information and belief, Defendant Green Imaging is a limited liability company organized under Texas law with its principal place of business in Houston, Texas.

## JURISDICTION AND VENUE

19.     This Court has subject matter jurisdiction over MDSave's claims pursuant to 28 U.S.C. §§ 1331, 1338, 1367, as MDSave asserts claims arising under federal law, including claims of federal trademark and patent infringement and violation of the Computer Fraud and Abuse Act, and MDSave's state law claims form part of the same case or controversy as its claims arising under federal law.

20.     This Court has general personal jurisdiction over Green Imaging because it is a Texas limited liability company and maintains its headquarters in Houston, Texas. Further, this Court has specific personal jurisdiction over Green Imaging because Green Imaging has directed its wrongful conduct at the State of Texas, including by re-selling altered and fabricated MDSave

bundled healthcare services and the representative vouchers in the State of Texas, including in the Western District of Texas and, upon information and belief, conspiring with Defendants Sesame and Tripment to steal MDSave's protected data and exploit it through their respective websites, which are also targeted at the State of Texas, including the Western District of Texas. Indeed, both Sesame and Tripment offer services using healthcare providers in the State of Texas, including the Western District of Texas, which, upon information and belief, are based on data stolen from MDSave with healthcare providers that have a contractual relationship with MDSave but not with Green Imaging, Tripment, or Sesame. Further, the State of Texas is MDSave's largest market, and, accordingly, it has suffered injury there from Defendants' actions. Green Imaging's wrongful conduct as alleged herein gives rise to all of MDSave's claims against it and, accordingly, arises from the same core set of facts.

21.     This Court has specific personal jurisdiction over Sesame because Sesame has stolen MDSave's protected data and is exploiting it in the State of Texas, and its wrongful conduct is otherwise directed at the State of Texas. Indeed, Sesame directs its website at existing and potential customers in the State of Texas, including in the Western District of Texas, by selling bundled healthcare services and the representative vouchers for services with healthcare providers both generally and for those who have an exclusive relationship with MDSave, engaging with existing or potential MDSave customers there by assisting in identifying healthcare providers, scheduling appointments, and otherwise facilitating customer service needs. Sesame is actively promoting its services and engaging with customers in the State of Texas, including in the Western District of Texas. Further Sesame is actively engaging directly with healthcare providers in the State of Texas, including the Western District of Texas, in order to develop its own relationships based on information misappropriated from MDSave. Sesame is actively and knowingly exploiting

MDSave's stolen data in the State of Texas, including the Western District of Texas. Further, Sesame has infringed and continues to infringe MDSave's patents in the State of Texas, including the Western District of Texas. The State of Texas is MDSave's largest market, and, accordingly, it has suffered injury there from Defendants' actions. Sesame's wrongful conduct as alleged herein gives rise to all of MDSave's claims against it and, accordingly, arises from the same core set of facts.

22.     This Court has specific personal jurisdiction over Tripment because Tripment has stolen MDSave's protected data and is exploiting it in the State of Texas, and its wrongful conduct is otherwise directed at the State of Texas. Indeed, Tripment directs its website at existing and potential customers in the State of Texas, including in the Western District of Texas, by selling bundled healthcare services and the representative vouchers for services with healthcare providers who have an exclusive relationship with MDSave, engaging with existing or potential MDSave customers there by assisting in identifying healthcare providers, scheduling appointments, and otherwise facilitating customer service needs. Tripment is actively promoting its services and engaging with customers in the State of Texas, including in the Western District of Texas. Further, Tripment is actively engaging directly with healthcare providers in the State of Texas, including the Western District of Texas, in order to develop its own relationships based on information misappropriated from MDSave. Tripment is actively and knowingly exploiting MDSave's stolen data in the State of Texas, including the Western District of Texas. Further, Tripment has infringed and continues to infringe MDSave's patents in the State of Texas, including the Western District of Texas. The State of Texas is MDSave's largest market, and, accordingly, it has suffered injury there from Defendants' actions. Tripment's wrongful conduct as alleged herein gives rise to all of MDSave's claims against it and, accordingly, arises from the same core set of facts.

23.     Venue in this Court is proper under 28 U.S.C. §§ 1391, 1400(a), 1400(b), for each of MDSave's claims, and against each of the Defendants so asserted, because, as set forth above, each Defendant is subject to this Court's personal jurisdiction in this District. Indeed, Green Imaging has stolen MDSave's protected data and exploited it and sold it through Green Imaging's website offering bundled healthcare services from healthcare providers in this District, and has conspired with Sesame and Tripment to steal MDSave's protected data and exploit it through Sesame's and Tripment's respective websites, as both Sesame and Tripment offer bundled healthcare services from healthcare providers in this District. Defendants have jointly and individually infringed MDSave's patent(s) and maintain a physical place of business in this District as well. For instance, Green Imaging maintains offices in the Western District of Texas, and it has offered and continues to offer altered and fabricated MDSave vouchers in this District. MDSave's claims against Defendants derive from their wrongful campaign to steal, exploit, and otherwise violate MDSave's protected data, intellectual property, services, and goodwill, all of which derive from the same set of facts. Because Defendants are subject to the Court's personal jurisdiction, venue in this District is proper.

## FACTUAL ALLEGATIONS

### MDSave's Innovative Online Marketplace

24.     MDSave provides an online healthcare marketplace that allows individuals and employers to purchase bundled healthcare services and their respective vouchers for common medical procedures, such as MRIs, CT scans, ultrasounds, colonoscopies, blood tests, and general surgeries, at upfront and reduced rates, which it has negotiated in advance with a nationwide network of healthcare partners. MDSave's negotiated rates are often far below the national average, offering patients savings up to 60%, a feat it has achieved by building meaningful

relationships with its healthcare partners who are pleased to provide their services to a growing patient base.

25.     MDSave also sells bundles of its vouchers to employers through its proprietary employer platform, MDSave for Employers, which grants employers access to a private network of local hospitals and providers. For example, an employer may select to purchase a group of common services, such as for MRIs, mammograms, colonoscopies, blood tests, CT scans, and ultrasounds, which the employer offers as a supplement or substitute to a sponsored health plan.

26.     Forming relationships with its healthcare partners requires significant work. MDSave performs extensive research into potential healthcare partners, from single-office providers to large regional hospital groups. It often takes months to reach a final agreement. And after an agreement is reached, MDSave's technology team then performs extensive work with its healthcare partners, including by assisting the partners with integration and implementation. MDSave's account management teams also work closely with the healthcare partners to educate them on MDSave's platform and services, which involves onsite visits at the hospitals and providers to train all facility staff on how to accept and process an MDSave voucher. Finally, MDSave also meets with the healthcare partner's physicians, radiologists, pathologists, anesthesiologists, and all other providers, in order to negotiate rates for vouchers and bundles of vouchers. This allows MDSave to offer comprehensive voucher bundles to employers at affordable prices.

27.     Since its founding in 2011, MDSave has built partnerships with 7 out of the 10 largest health care systems in the country, including 300 hospitals and nearly 5,000 individual providers, which collectively offer more than 1,700 individual procedures. To accomplish this, MDSave has expended more than $26 million and countless hours conducting market research,

traveling to meet with and develop relationships with existing and potential healthcare partners, and, ultimately, negotiating reduced-fee rates for essential bundled healthcare procedures that it can offer to its existing and potential customers.

28.     MDSave has also achieved this growth by developing and expanding its customer base, which it does by building and developing its online tools, including its website and protected data, and engaging with new and existing customers, through customer service, advertising, and other outreach efforts.

29.     MDSave's innovative online marketplace has been recognized across the industry. In 2013, MDSave was awarded Top Healthcare Startup by the Nashville Area Chamber of Commerce. In 2015, Fortune featured MDSave in an article describing it as "the healthcare version of Expedia" that "plans to save lives, lower medical bills." In 2019, MDSave was recognized as #152 on Inc. Magazine's list of the 5,000 fastest-growing companies in the nation. MDSave has been featured in other national publications and media including Consumer Reports, Fox News, Bloomberg Business, and Yahoo! Finance.

### The MDSave Website Terms and Conditions

30.     When accessing MDSave's website (https://www.mdsave.com/), visitors agree to abide by its Terms and Conditions (the "MDSave T&C") regardless of whether the visitor is "a casual visitor to the Site, a physician or medical provider who subscribes to the Services in order to appear on the Site (a 'Provider'), or a patient who utilizes the Services to purchase medical vouchers (a 'Consumer')." *See* MDSave T&C. Moreover, the MDSave T&C does not permit users to visit the site if they do not agree to the MDSave T&C, are a direct competitor, or for purposes of monitoring the availability, performance, or functionality of MDSave's website. *Id.*

31.     The MDSave T&C, attached hereto as **Exhibit 1**, and, as set forth below, expressly prohibits many of the actions committed by Defendants here.

32.     Purchasers of MDSave vouchers explicitly agree to certain important restrictions as a condition of the purchase:



33.     MDSave expressly prohibits users from re-selling its services purchased through MDSave.[1] When a customer purchases a service through MDSave, the customer is provided a voucher for that service. As noted above, a voucher is a persistent data record generated by

---

[1] The MDSave T&C defines "Site," as http://www.mdsave.com and "Services" as "all services you order from us and made available by us via the Site and/or other locations designated by us." MDSave T&C, §§ 1.3, 1.5.

MDSave that includes the primary service, such as a knee replacement, and secondary services such as anesthesia, radiology, and/or physical therapy, the provider, the facility fee, prescriptions, and the reduced rate to which MDSave and the provider have agreed. Attached hereto as **Exhibit 2** is an example official MDSave voucher for an MDSave service. The MDSave T&C specifies that only the purchaser of the voucher may use the voucher for the service and that the purchaser may not sell the services. *See* MDSave T&C, § 5.2 ("Prohibited Activities. You shall not: (a) make the Services available to anyone other than Users; (b) sell, resell, rent or lease the Services."); *see also id.,* § 7.1 ("MDSave Consumer pre-paid medical vouchers are only redeemable for the specific medical procedure selected by the consumer at the time of purchase.").

34.     Further, when accessing MDSave's website to purchase a voucher, visitors must "agree to abide by all applicable local, state, national, and foreign laws, treaties, and regulations in connection with your use of the Site and its content, and agree not to use the Services for any purpose that is prohibited by this Agreement." *Id.*, § 5.1.

35.     The MDSave T&C also prohibit a range of activities, including but not limited to (i) reproducing or sharing any content from MDSave's website for any purpose; (ii) sharing or selling information derived from MDSave's website; (iii) modifying or otherwise adapting data from MDSave's website for any purpose; (iv) accessing, storing, reproducing, displaying, transferring, extracting, or harvesting content from the MDSave website, including through scraping, crawling, spidering, botting, or other similar means, in any manner; and (v) encouraging, collaborating with, or instructing any other person or entity to do any of these or other prohibited activities. MDSave's customers also expressly agree to the MDSave T&C when acquiring a voucher. These provisions should come as no surprise to the Defendants—they all have similar

provisions in place for their websites. *See* https://sesamecare.com/terms-of-service; https://tripment.com/terms-of-service.

36.     By accessing and utilizing MDSave's website, Defendant Sesame agreed to be bound by, and comply with, the MDSave T&C, either explicitly or implicitly and, through its access and/or use of MDSave's website, had either actual and/or constructive knowledge of the MDSave T&C.

37.     By accessing and utilizing MDSave's website, Defendant Tripment agreed to be bound by, and comply with, the MDSave T&C, either explicitly or implicitly and, through its access and/or use of MDSave's website, had either actual and/or constructive knowledge of the MDSave T&C.

38.     By accessing and utilizing MDSave's website, Defendant Green Imagining agreed to be bound by, and comply with, the MDSave T&C, either explicitly or implicitly and, through its access and/or use of MDSave's website, had either actual and/or constructive knowledge of the MDSave T&C.

**MDSave's Database of Protected Information**

39.     Customers, as provided in the MDSave T&C, can search the MDSave website by either a procedure or a provider. An MDSave customer can also enter location information, such as a city and state or a zip code.



40. The search results provide a detailed description of the requested service, a comparison of the estimated national average cost for the service and the "MDSave regional average," and a list of the available providers and prices.



41. When a user clicks on a particular provider, MDSave provides an additional web page at which it presents a more detailed description of the selected procedure, a breakdown of

what the reduced rate includes, detailed information about the provider, including its address, hours, and phone number, including a map, and patient reviews.



42.    As demonstrated above, MDSave's website can be queried for specific information, such as whether MDSave has negotiated with any providers in a particular location and, if so, with whom and at what price. However, the data from which these queries pull, MDSave's database, cannot be comprehensively accessed or viewed. Indeed, the only way to access the entirety of

MDSave's database would be to run millions of individual searches and document the results or steal it through improper web scraping tools.

43.     The MDSave T&C does not permit visitors to MDSave's website to "access, copy, store, reproduce, display, transfer, extract, or harvest Site content or Site data ***through scraping, crawling, spidering, botting, or other similar means, whether manually or through an automated system or software***, whether such Site content or Site data is displayed directly from the Site, Services, or through an Approved Developer's application, service, website, or otherwise directly or indirectly through a third party." MDSave T&C, § 5.3.19 (emphasis added).

**Defendants Sesame and Tripment**

44.     In or around November 2021, MDSave discovered that Sesame and Tripment were offering virtually the same list of procedures from the same list of providers as those available on MDSave's website. **Exhibit 3** is a sample of more than a hundred procedures from MDSave partner providers in the State of Texas that Sesame lists on its website that are nearly identical or identical to those first listed by MDSave. **Exhibit 4** shows hundreds more copied MDSave listings that are reproduced on both Tripment's and Sesame's websites as "Green Imaging" procedures.

45.     Sesame's and Tripment's offered prices are derived from MDSave's own negotiated prices with those same vendors, except that they are significantly marked up. Thus, Defendants are improperly pursuing their own ends by marking up a service that they do not provide and are not authorized to sell. This harms not only MDSave, but also the purchaser, the provider, and the overall goal of delivering affordable healthcare.

46.     Given the vast amount of data that MDSave has compiled and organized, the only way to wholesale copy MDSave's data, absent performing millions of manual searches, is using

illegal and improper computer-implemented web scraping tools across state lines via the public internet.

47.     MDSave has evidence of thousands of instances during which a visitor to its website employed a web scraping tool to access its data. MDSave has documented instances of MDSave's website being scraped, including the IP address used, the page visited, and the scraping tool utilized in each instance. Certain of these attacks derived from IP addresses in New York, New York, where Sesame and Tripment are based.

48.     Many of these improper "scrapes" are from MDSave's procedure lists page, which comprehensively identifies all of MDSave's procedures and prices for a given hospital. That is the exact data copied on Sesame's and Tripment's respective sites. And the largest number of these scrapes occurred towards the end of October 2021, shortly after Sesame and Green Imaging publicly announced a new partnership and MDSave discovered that its data had been copied onto Sesame's and Tripment's respective sites.

49.     Sesame and Tripment have stolen MDSave's data and used it in order to unfairly compete with MDSave in the same markets, for the same services, from the same healthcare providers, and for the same potential customers.

50.     Sesame and Tripment base their own vouchers off the data that they have stolen from MDSave, adding a consistent mark-up, such as $100, and then using MDSave's data again to negotiate their own vouchers with new customers.

51.     Further, both Sesame and Tripment wrongfully represent that they have pre-existing agreements with the healthcare partners listed on their respective sites.

52.     For instance, Tripment's website represents that Tripment has "negotiated the pricing directly with the facilities":



53.     Sesame claims that it has a provider network of "10,000 doctors and specialists" that have agreed to "participate" on its platform. *See* https://sesamecare.com/. Sesame also represents that for each provider listed on Sesame, Sesame has already vetted the provider by having the provider "share" the provider's "licensure, education, and clean disciplinary history." *See* https://sesamecare.com/faq. For instance, its website states:

> **How does Sesame vet providers?**                                                    −
>
> The quality of our partners is a priority. Sesame works with licensed providers, who share their licensure, education history, and confirm a clean disciplinary history as a condition for participating on the platform. Consumers can fully evaluate their options to help ensure the provider is a good fit for them. However, the inclusion of any provider on the Services shall not be considered as an endorsement of such health care provider by Sesame. You should conduct your own due diligence concerning the qualifications of a health care provider prior to paying for or receiving care.

54.     But most, if it not all, of the healthcare partners Defendants claim to have are, in fact, derived from MDSave's website. Defendants simply do not have the relationships they represent.

55.     Upon information and belief, Tripment has not "negotiated prices directly" with these providers prior to listing them on the Tripment website.

56.     Upon information and belief, Sesame has not required that providers listed on the site "share" the provider's "licensure, education, and clean disciplinary history as a condition for participating on the platform."

57.     These are providers with whom MDSave first developed relationships. Upon information and belief, Sesame and Tripment only list these partners because they have stolen

MDSave's data and are wrongfully exploiting it for their own benefit, and falsely advertising these relationships as their own.

58.     Indeed, upon information and belief, when a Sesame or Tripment customer chooses to buy a service from such a provider, Sesame or Tripment will then reach out to that provider and attempt to negotiate a transaction price with them, using the stolen MDSave information to negotiate.

59.     In addition, or alternatively, Sesame and Tripment might obtain an MDSave voucher from Green Imaging to re-sell. Of course, Sesame and Tripment both obtained the "sale" of the voucher and attempted to negotiate a rate with the healthcare provider wrongfully using MDSave's data, or outright re-selling MDSave vouchers purchased by Green Imaging.

**Defendant Green Imaging**

60.     From time to time, Green Imaging has purchased bundles of vouchers from MDSave for its own contracted self-insured employer customers. Green Imaging expressly represented to MDSave that the vouchers it was purchasing would only be used by Green Imaging to provide service to its self-insured employer customers.

61.     In or around November 2021, MDSave discovered that Green Imaging had been working in concert with Sesame and/or Tripment to steal and exploit MDSave's data and otherwise illegally compete with MDSave.

62.     Around this same time, MDSave also discovered that Green Imaging had already been wrongfully purchasing and re-selling MDSave's vouchers directly to customers with unauthorized mark-ups sometimes over 50%. MDSave further discovered that Green Imaging had altered and fabricated MDSave's vouchers to falsely make them appear as though they came from Green Imaging through a "partnership" with MDSave. Examples of Green Imaging altering

MDSave vouchers and passing them off to consumers as their own is attached hereto as **Exhibit 5**. An example of Green Imaging fabricating an MDSave voucher is attached hereto as **Exhibit 6.**

63.    Green Imaging's actions have caused and are continuing to cause confusion among MDSave's healthcare partners, as Green Imaging is holding itself out to be MDSave's authorized reseller partner, when it is not. Green Imaging's actions are also resulting in price confusion, which has damaged MDSave's relationships with its healthcare partners and patient customers.

### The MDSave Marks

64.    Since founding MDSave, MDSave has used the MDSave trademarks in connection with its business.

65.    In recognition of the distinctiveness of MDSave's trademarks, MDSave has obtained multiple federal trademark registrations for the MDSave trademarks, giving it exclusivity of the use of the mark for the covered services, in addition to its broad common-law rights.

66.    Through use and registration, MDSave owns the MDSave trademarks including the following U.S. trademark registrations for marks containing the term MDSave (the "MDSave Marks").

| Mark | Services | Reg. No. | Reg. Date |
|---|---|---|---|
| MDSAVE | Class 42: Providing a website that gives computer users the ability to purchase medical services from medical providers. | 4719881 | 4/14/2015 |
| MDSAVE | Class 44: Providing a web site featuring medical information | 4716276 | 4/7/2015 |
| MDSAVE | Class 35: Promoting the goods and services of others by providing a website featuring price-comparison information for various medical providers. | 4719885 | 4/14/2015 |

67.    As a result of MDSave's continuous use of the distinctive MDSave Marks, it has developed significant goodwill, and is well known. Through MDSave's longstanding use and

promotion of the MDSave Marks, the public has come to associate the MDSave Marks exclusively with MDSave and its services.

**Green Imaging's Infringement of the MDSave Marks**

68.     MDSave has carefully monitored and policed the use of the MDSave Marks and has not authorized Green Imaging to use the MDSave Marks.

69.     As discussed above, Green Imaging has altered and fabricated MDSave vouchers and, in doing so, has used the MDSave Marks without authorization. *See* **Exhibits 5, 6.**

70.     Green Imaging's infringement of the MDSave Marks has caused MDSave harm. It has caused confusion among MDSave's current and potential customers and healthcare partners. Further, Green Imaging's infringement of the MDSave Marks will result in it unfairly and unlawfully benefitting from the goodwill inherent in the MDSave Marks, which rightfully belong to their owner, MDSave.

**Sesame's and Tripment's Infringement of the MDSave Marks**

71.     MDSave has carefully monitored and policed the use of the MDSave Marks and has not authorized Sesame or Tripment to use the MDSave Marks.

72.     Sesame and Tripment list Green Imaging's altered and fabricated MDSave vouchers on their respective websites and sell the infringing vouchers to customers. *See* **Exhibits 7, 8** (showing examples of Sesame and Tripment re-listing MDSave services with Green Imaging as the provider, fulfilled by Green Imaging's altered and fabricated vouchers). In doing so, Sesame and Tripment have used the MDSave Marks without authorization.

73.     Sesame's and Tripment's infringement of the MDSave Marks has caused MDSave harm, in that it has caused confusion among MDSave's current and potential customers and healthcare partners. Further, Sesame's and Tripment's infringement of the MDSave Marks will

result in it unfairly and unlawfully benefitting from the goodwill inherent in the MDSave Marks,

which rightfully belongs to their owner, MDSave.

**Defendants' Infringement of the MDSave '072 Patent**

74.     MDSave owns United States Patent No. 9,123,072 (the "'072 Patent"), attached

hereto as **Exhibit 9**.

75.     The Abstract of the '072 Patent states:

> An apparatus for facilitating purchases of services includes an application server
> providing a network service and maintaining a service offer database that comprises
> a plurality of service offer information records respectively associated with a
> plurality of service offers. The plurality of service offers include at least one service
> offer for a bundled set of services. Each information record comprises an indication
> of a primary service, a purchase price, a payment amount for a primary service, and
> compensation information for receiving payment for the primary service. Upon
> being accessed by user operating a client system, the network service is operable to
> receive an indication of a service offer being selected for purchase by the user,
> receive purchase information from the user specifying a funding source, and issue
> a request to the funding source for funds corresponding to the purchase price
> included in the information record associated with the selected service offer.

76.     The invention claimed by the '072 Patent represents a significant advance over the

prior art.

77.     As shown in the attached '072 Patent preliminary claim charts for each Defendant,

which are attached hereto as **Exhibits 10** (Sesame), **11** (Tripment), and **12** (Green Imaging),

Defendants are infringing, individually and jointly, at least Claim 13 of the '072 Patent through

their respective products and services in the United States.

78.     Through this Complaint, MDSave alleges direct and indirect infringement of the

'072 Patent in violation of 35 U.S.C. § 271, against defendants Sesame, Tripment, and Green

Imaging, as set forth below in the Fifth and Sixth Claim for Relief.

## Defendants' Infringement of the MDSave '423 Patent

79.     MDSave owns United States Patent No. 11,170,423 B2 (the "'423 Patent"),

attached hereto as **Exhibit 13**.

80.     The Abstract of the '423 Patent states:

> Apparatus and associated methods related to determining medical services
> appropriate to a patient in response to a patient lifecycle event: presenting the
> medical services to the patient for selection; optionally scheduling the selected
> medical services; and automatically presenting the selected services for
> prepayment. The patient lifecycle event may be, for example, a doctor's order,
> diagnosis, condition change, payment, admission, or discharge. The services
> presented to the patient may be determined in response to, and as a function of, the
> lifecycle event. For example, the services presented may include procedures
> determined after the lifecycle event, in view of patient medical history. In an
> illustrative example, the services presented may be based on medical indication,
> contraindication, provider or facility availability, or patient scheduling preference,
> advantageously permitting more medically relevant, beneficial, convenient, or cost-
> effective services. Various examples may advantageously provide a discount for a
> service bundle provided at a particular time or facility or by an affiliated physician
> or medical group.

81.     The invention claimed by the '423 Patent represents a significant advance over the

prior art.

82.     As shown in the attached '423 Patent preliminary claim charts for each Defendant,

which are attached hereto as **Exhibits 14** (Sesame), **15** (Tripment), and **16** (Green Imaging),

Defendants are infringing, individually and jointly, at least Claim 1 of the '423 Patent through

their respective products and services in the United States.

83.     Through this Complaint, MDSave alleges direct and indirect infringement of the

'423 Patent in violation of 35 U.S.C. § 271, against defendants Sesame, Tripment, and Green

Imaging, as set forth below in the Seventh and Eighth Claim for Relief.

## CLAIMS FOR RELIEF

**FIRST CLAIM FOR RELIEF**
**False Advertising Under 15 U.S.C. § 1125(a)**
(Against All Defendants)

84.     Defendants Sesame and Tripment state on their respective websites, which are used in and an instrumentality of interstate commerce, that they maintain relationships with the healthcare providers for whom they are selling vouchers. Upon information and belief, these statements are false. Upon information and belief, Sesame and Tripment do not have pre-existing relationships with these providers and are only listing procedures and services by these providers because they have stolen MDSave's data.

85.     Indeed, upon information and belief, once either Sesame or Tripment "sells" a healthcare procedure based on its misrepresentation that it has a pre-existing relationship with these healthcare providers, Sesame or Tripment must then attempt to try to secure a "voucher" for the price that it claimed it had pre-arranged with the healthcare providers.

86.     There can be no question these false statements deceived and have the potential to deceive the public, including MDSave's current and potential customers. Upon information and belief, customers purchase healthcare procedures from Sesame and Tripment based on the representation that they have pre-arranged with healthcare providers for specific services at specific rates, and that those providers have been vetted and approved. Upon information and belief, if customers understood that Sesame's and Tripment's representations regarding their available bundled healthcare procedures were only aspirational (and indeed, based on data stolen from another healthcare provider, MDSave), then they would not make the purchases. Thus, Sesame's and Tripment's misrepresentations were material.

87.     Defendant Green Imaging is also wrongfully representing its affiliation with MDSave and MDSave's healthcare partners, where no such relationship exists. Indeed, Green

Imaging has altered and fabricated MDSave vouchers, placing its own name alongside MDSave's, which is causing confusion among both MDSave's existing and potential customers and healthcare partners.

88.     MDSave has been injured as a result of Defendants' actions, as alleged herein. MDSave has lost existing and potential customers, and the actions have harmed its relationships with its existing and potential healthcare partners.

89.     Defendants' conduct has caused and is causing irreparable injury to MDSave and, unless enjoined by this Court, will continue to do so.

**SECOND CLAIM FOR RELIEF**
**Federal Trademark Infringement Under Lanham Act § 32(1)(a), 15 U.S.C. § 1114(1)**
(Against All Defendants)

90.     MDSave realleges and incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

91.     Through use and registration, MDSave owns United States Trademark Registrations Nos. 4719881, 4716276, and 4719885 for the MDSave Marks.

92.     Green Imaging's use of the MDSave Marks is confusingly similar to the MDSave Mark, in appearance, sound, connotation, and overall commercial impression.

93.     MDSave has not authorized Green Imaging to use the MDSave Marks, and Green Imaging's use of the MDSave Marks has caused and will continue to cause confusion or mistake with the MDSave Marks, or to deceive the source, affiliation, or sponsorship with MDSave, in violation of the Lanham Act, 15 U.S.C. § 1114.

94.     MDSave also has not authorized Defendants Sesame and Tripment to re-sell MDSave vouchers that Green Imagining has wrongfully and without authorization altered or fabricated.

95.     As a direct and proximate result of Defendants' intended wrongful conduct, MDSave will be irreparably injured and damaged, and unless Defendants have been enjoined by this Court, MDSave will suffer harm to its name, reputation, and goodwill. This harm constitutes an injury for which MDSave has no adequate remedy at law.

96.     On information and belief, Defendants have acted willfully, deliberately, intentionally and with bad faith to usurp MDSave's rights, making this an exceptional case, and Green Imaging should be held liable for treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

97.     Defendants' conduct has caused and is causing irreparable injury to MDSave and, unless enjoined by this Court, will continue to do so.

**THIRD CLAIM FOR RELIEF**
**Federal Unfair Competition Under 15 U.S.C. § 1125(A)**
(Against All Defendants)

98.     MDSave realleges and incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

99.     MDSave has common-law and federal trademark rights in the MDSave Marks, which are uniquely associated with MDSave as a source of the goods and services offered in connection with the MDSave Marks.

100.    MDSave has not authorized Green Imaging to use the MDSave Marks and Green Imaging's use of the MDSave Marks has resulted and will continue to result in Green Imaging unfairly and unlawfully benefitting from the goodwill inherent in the MDSave Marks.

101.    MDSave also has not authorized Defendants Sesame and Tripment to re-sell MDSave vouchers that Green Imagining has wrongfully and without authorization altered or fabricated.

102.    Defendants' use of the MDSave Marks has been and will continue to be confusingly similar to the MDSave's use of the MDSave Marks, in appearance, sound, connotation, and overall commercial impression, and constitutes unfair competition.

103.    Defendants' use of the MDSave Marks has caused and will continue to cause confusion or mistake with the MDSave Marks, or to deceive as to source, affiliation, or sponsorship with MDSave, in violation of the Lanham Act, 15 U.S.C. § 1125(a).

104.    MDSave has been damaged and will continue to be damaged by Defendants' infringement in an amount to be determined at trial.

105.    As a direct and proximate result of Defendants' wrongful conduct, MDSave has been and will continue to be irreparably injured and damaged, and unless Defendants have been enjoined by this Court, MDSave will continue to suffer harm to its name, reputation, and goodwill. This harm constitutes an injury for which MDSave has no adequate remedy at law.

106.    On information and belief, Defendants have acted willfully, deliberately, intentionally and with bad faith to usurp MDSave's rights, making this an exceptional case, and Defendants should be held liable for treble damages and attorneys' fees pursuant to 15 U.S.C. § 1117(a).

107.    Defendants' conduct has caused and is causing irreparable injury to MDSave and, unless enjoined by this Court, will continue to do so.

**FOURTH CLAIM FOR RELIEF**
**Violation of the Computer Fraud and Abuse Act Under 18 U.S.C. § 1030**
(Against All Defendants)

108.    MDSave realleges and incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

109.    On information and belief, Defendants Sesame, Tripment, and Green Imaging, individually and in active concert with each other, violated the Computer Fraud and Abuse Act,

18 U.S.C. § 1030(a)(2)(C) on numerous occasions, by intentionally accessing a protected computer used for interstate commerce or communication, without authorization or exceeding authorized access, and thereby obtaining information from the protected computer and causing loss to one or more persons during a one-year period aggregating at least $5,000 in value.

110.    On information and belief, MDSave's computer systems that Defendants Sesame, Tripment, and Green Imaging accessed on numerous occasions were used to conduct business nationwide and therefore were "used in or affecting interstate or foreign commerce or communication," and meet the definition of a "protected computer" set forth in 18 U.S.C. § 1030(e)(2)(B).

111.    Through the MDSave T&C, MDSave prohibits visitors to its website from "access[ing], copy[ing], stor[ing], reproduc[ing], display[ing], transfer[ing], extract[ing], or harvest[ing] Site content or Site data *through scraping, crawling, spidering, botting, or other similar means, whether manually or through an automated system or software*, whether such Site content or Site data is displayed directly from the Site, Services, or through an Approved Developer's application, service, website, or otherwise directly or indirectly through a third party." MDSave T&C, § 5.3.19 (emphasis added). The MDSave T&C also states that MDSave owns the content, data, features, and functionality, including "the right to the compilation, arrangement, and assembly, along with any modifications, variations, updates, versions, and changes to all information entered and stored within our Site database(s) as part of the Site," which is protected copyrighted, and that any user of MDSave's website is not permitted to "republish, reproduce, transmit, transfer, prepare derivative versions or works, or otherwise use any content on this Site without our prior, express, and written permission." *Id.*, § 8.1. The MDSave T&C further states

that users shall not "(a) make the Services available to anyone other than Users" or "(b) sell, resell, rent or lease the Services." *Id.*, § 5.1.

112.   MDSave has put these restrictions in place to ensure that the information on its computer systems is restricted to authorized individuals acting within the scope of their authority.

113.   On information belief, on numerous occasions, Defendants Sesame and Tripment accessed and transferred MDSave's protected data for their own use without authorization from MDSave. Thus, Sesame and Tripment "obtained information" by accessing MDSave's protected computer.

114.   Defendant Green Imaging has on numerous occasions used MDSave's website to purchase MDSave vouchers with the intent to resell MDSave's services on the open market, in clear violation of the MDSave T&C. Thus, Green Imaging has also "obtained information" by accessing MDSave's protected computer.

115.   Defendants Sesame, Tripment, and Green Imaging were not authorized to access or use MDSave's computer systems on these occasions for these prohibited purposes.

116.   Misappropriating MDSave's protected data and maintaining such information, Sesame, Tripment, and Green Imaging violated and continue to violate the Computer Fraud and Abuse Act.

117.   Sesame's, Tripment's, and Green Imaging's unauthorized access and use of MDSave's computer systems and misappropriation of protected data have required MDSave to incur significant costs in (a) assessing the potential damage to MDSave that has been caused by such unauthorized access, use, and misappropriation, (b) responding to the loss of trade secrets and confidential information caused by MDSave's actions, and (c) mitigating the loss of goodwill among MDSave's members that has resulted from such unauthorized use, access, and

misappropriation. MDSave employees spent significant time investigating the data breach and implementing new security measures on the MDSave website, incurring substantial expense.

118.     MDSave has suffered losses and damages by reason of these violations in excess of $5,000 in the one-year period from the date that, upon information and belief, Defendants' first offending acts occurred.

119.     Defendants' conduct has caused and is causing irreparable injury to MDSave and, unless enjoined by this Court, will continue to do so.

**FIFTH CLAIM FOR RELIEF**
**Direct Infringement of the '072 Patent**
(Against All Defendants)

120.     MDSave realleges and incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

121.     As set forth in **Exhibits 10**, **11**, and **12**, Defendants, acting individually and in concert, infringed the '072 Patent either literally or under the doctrine of equivalents by performing each and every step set forth in at least Claim 13 of the '072 Patent, in violation of 35 U.S.C. § 271.

122.     Upon information and belief, Defendants have actual and constructive knowledge of the asserted patent(s), including because the patent(s) is (are) listed on MDSave's website, which Defendants studied, scraped, and copied.

123.     MDSave has been damaged by the Defendants' infringement.

124.     Defendants' conduct has been willful and intentional.

125.     Defendants' conduct has caused and is causing irreparable injury to MDSave and, unless enjoined by this Court, will continue to do so.

## SIXTH CLAIM FOR RELIEF
### Indirect Infringement of the '072 Patent
(Against All Defendants)

126.    MDSave realleges and incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

127.    Upon information and belief, Defendants have actual and constructive knowledge of the asserted patent(s), including because the patent(s) is (are) listed on MDSave's website, which Defendants studied, scraped, and copied.

128.    As set forth in **Exhibits 10**, **11**, and **12**, Defendants, acting individually and in concert, indirectly infringed the '072 Patent either literally or under the doctrine of equivalents in violation of 35 U.S.C. § 271.

129.    MDSave has been damaged by the Defendants' infringement.

130.    Defendants' conduct has been willful and intentional.

131.    Defendants' conduct has caused and is causing irreparable injury to MDSave and, unless enjoined by this Court, will continue to do so.

## SEVENTH CLAIM FOR RELIEF
### Direct Infringement of the '423 Patent
(Against All Defendants)

132.    MDSave realleges and incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

133.    As set forth in **Exhibits 14**, **15**, and **16**, Defendants, acting individually and in concert, infringed the '423 Patent either literally or under the doctrine of equivalents by performing each and every step set forth in at least Claim 1 of the '423 Patent, in violation of 35 U.S.C. § 271.

134.    Upon information and belief, Defendants have actual and constructive knowledge of the asserted patent(s), including because the patent(s) is (are) listed on MDSave's website, which Defendants studied, scraped, and copied.

135.     MDSave has been damaged by the Defendants' infringement.

136.     Defendants' conduct has been willful and intentional.

137.     Defendants' conduct has caused and is causing irreparable injury to MDSave and, unless enjoined by this Court, will continue to do so.

**EIGHTH CLAIM FOR RELIEF**
**Indirect Infringement of the '423 Patent**
(Against All Defendants)

138.     MDSave realleges and incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

139.     Upon information and belief, Defendants have actual and constructive knowledge of the asserted patent(s), including because the patent(s) is (are) listed on MDSave's website, which Defendants studied, scraped, and copied.

140.     As set forth in **Exhibits 14**, **15**, and **16**, Defendants, acting individually and in concert, indirectly infringed the '423 Patent either literally or under the doctrine of equivalents in violation of 35 U.S.C. § 271.

141.     MDSave has been damaged by the Defendants' infringement.

142.     Defendants' conduct has been willful and intentional.

143.     Defendants' conduct has caused and is causing irreparable injury to MDSave and, unless enjoined by this Court, will continue to do so.

**NINTH CLAIM FOR RELIEF**
**Violation of the Texas Harmful Access by Computer Act**
**Under Tex. Civ. Prac. & Rem. Code. § 143 et seq.**
(Against All Defendants)

144.     MDSave realleges and incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

145.     Defendants, individually and in active concert with each other, have violated Section 33.02 of the Texas Penal Code to the harm of MDSave.

146.     On information belief, on numerous occasions, Defendants Sesame and Tripment knowingly and intentionally accessed a computer, computer network, or computer system without the effective consent of the owners, MDSave, in violation of Section 33.02 of the Texas Penal Code.

147.     In addition, on numerous occasions, Defendant Green Imaging knowingly and intentionally accessed a computer, computer network, or computer system without the effective consent of the owner, MDSave, in violation of Section 33.02 of the Texas Penal Code, by purchasing services from MDSave's website for a commercial purpose expressly prohibited by the MDSave T&C.

148.     MDSave has been injured by Sesame's, Tripment's, and Green Imaging's knowing and intentional access to MDSave's computers, computer networks, and computer systems without consent, as MDSave has had to incur significant costs in (a) assessing the potential damage to MDSave that has been caused by the Defendants' unauthorized access, use, and misappropriation, (b) responding to the loss of trade secrets, confidential information, and protected data caused by Defendants' actions, and (c) mitigating the loss of goodwill among MDSave's customers and healthcare partners that has resulted from Defendants' unauthorized use, access, and misappropriation. MDSave has also been injured by the reduction in MDSave's competitive advantages and the effect of Defendants' unauthorized access on MDSave's ability to compete effectively in the marketplace.

149.     Pursuant to Texas Civil Practice & Remedies Code Section 143.002(a), MDSave is entitled to recover its actual damages for injuries caused by Defendants' knowing and intentional access to MDSave's computer, computer network, or computer system without consent.

150.     Pursuant to Texas Civil Practice & Remedies Code Section 143.002(b), MDSave is also entitled to recover its reasonable attorneys' fees and costs for bringing this cause of action.

151.     Defendants' conduct has caused and is causing irreparable injury to MDSave and, unless enjoined by this Court, will continue to do so.

**TENTH CLAIM FOR RELIEF**
**Unfair Competition by Misappropriation**
(Against All Defendants)

152.     MDSave realleges and incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

153.     Defendants unlawfully accessed and transferred MDSave's protected data by impermissibly scraping and/or stealing it from MDSave's website for their own advantage and to the detriment of MDSave. This conduct constitutes unfair competition under the common law of the State of Texas.

154.     By unlawfully accessing and scraping MDSave's website and misappropriating trade secrets, proprietary information, and other protected data, Defendants increased their own customer bases, profits, and revenues, and implemented MDSave's trade secrets, proprietary information, and other protected data into their own respective businesses, undermining MDSave's competitive advantages in the marketplace.

155.     MDSave's trade secrets, proprietary information, and other protected data include the identification of and information about qualified healthcare providers across the nation, the services provided, and MDSave's negotiated rates with these providers, all of which are the result of the investment of substantial time, skill, and financial resources by MDSave. Defendants' use

of this information, in competition with MDSave, gave (and continues to provide) Defendants a special advantage in that competition because Defendants are burdened with little or none of the expenses incurred by MDSave.

156.    By competing against MDSave using the trade secrets, proprietary information, and other protected data that Defendants unlawfully misappropriated, Defendants engaged in unfair competition against MDSave, MDSave has suffered and continues to suffer substantial damages, and Defendants have unlawfully profited and continue to unlawfully profit.

157.    In addition, Defendants' tortious acts were willful and malicious. Consequently, MDSave is entitled to an award of exemplary damages sufficient to punish them and to serve as a deterrent to such conduct.

158.    Defendants' conduct has caused and is causing irreparable injury to MDSave and, unless enjoined by this Court, will continue to do so.

**ELEVENTH CLAIM FOR RELIEF**
**Civil Conspiracy**
(Against All Defendants)

159.    MDSave realleges and incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

160.    Defendants, willfully and knowingly, did, in addition to the other tortious conduct alleged herein, combine, conspire, and agree together and with each other to commit offenses against the laws of the State of Texas, including the Texas Harmful Access by Computer Act.

161.    Upon information and belief, Green Imaging, Sesame, and Tripment have conspired to steal and exploit MDSave's protectable data, including by illegally scraping MDSave's website, and using MDSave's data in order to pass off their respective products and services as their own and/or to interfere with MDSave's prospective business interests by reaching separate agreements with MDSave healthcare partners based on the stolen data, which had the

result of harming MDSave through loss of customers and impairment to its relationships with healthcare partners.

162.    Upon information and belief, Green Imaging and Sesame, Green Imaging and Tripment, or Green Imaging, Sesame, and Tripment, in concert, have worked together to accomplish the object of stealing MDSave's data and exploiting it for their own financial gain, and to MDSave's detriment.

163.    Upon information and belief, Green Imaging and Sesame and/or Tripment had a meeting of the minds on this objective because after Green Imaging and Sesame publicly announced their partnership, both Sesame's and Tripment's respective websites evidenced that they had copied, wholesale, MDSave's protectable data.

164.    Upon information and belief, Sesame and Tripment took overt acts in copying MDSave's data and, separately, exploiting that data through their respective sites. Upon information and belief, Green Imaging also took an overt act by conspiring with Sesame and/or Tripment to steal and exploit MDSave's data and by providing Sesame and/or Tripment with MDSave procedures and provider inventory that Sesame and/or Tripment passed off to consumers as their own, in order to expand their respective market shares and benefit financially, at the detriment of MDSave.

165.    As a proximate result of these actions, MDSave has suffered substantial financial and reputational harm, in lost customers, market confusion, reduced market share, and impairment to its relationships with its healthcare partners and future economic prospects, including opportunities to attract institutional investor capital.

166.    Defendants' conduct has caused and is causing irreparable injury to MDSave and, unless enjoined by this Court, will continue to do so.

## TWELFTH CLAIM FOR RELIEF
### Tortious Interference with Prospective Business Relations
(Against Green Imaging)

167.   MDSave realleges and incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

168.   There was a reasonable probability that MDSave would have sold vouchers to customers and/or entered into agreements with healthcare partners but for Green Imaging's tortious interference.

169.   Green Imaging, in re-selling MDSave's vouchers and passing them off as its own, acted with a conscious desire to prevent a relationship from occurring or knew that the interference was certain or substantially certain to occur as a result of its conduct. Indeed, each voucher that Green Imaging wrongfully resold prevented MDSave from rightfully engaging with a customer and, further, confused and impaired MDSave's relationships with its healthcare partners.

170.   Green Imaging's acts of violating the MDSave T&C, misrepresenting its intentions to MDSave, wrongfully re-selling MDSave vouchers, and altering or entirely fabricating MDSave vouchers, including in violation of the MDSave marks, constitute conduct that is independently tortious and unlawful.

171.   Green Imaging's tortious conduct of interfering with and stealing MDSave's prospective customers and impairing relationships with its healthcare partners proximately caused MDSave injury, including loss of customers, reduced market share, and impairment to its relationships with its healthcare partners and future economic prospects, including investment opportunities. As a result of these injuries, MDSave has suffered and will continue to suffer a loss and damages.

172.   Defendants' conduct has caused and is causing irreparable injury to MDSave and, unless enjoined by this Court, will continue to do so.

## THIRTEENTH CLAIM FOR RELIEF
### Tortious Interference with Prospective Business Relations
(Against Sesame and Tripment)

173.    MDSave realleges and incorporates by reference each and every paragraph of this Complaint as if fully set forth herein and further alleges as follows:

174.    There was a reasonable probability that MDSave would have sold vouchers to customers and/or entered into paid contractual agreements with healthcare providers but for Sesame's and Tripment's tortious interference.

175.    Defendants Sesame and Tripment acted with the conscious desire to prevent MDSave from forming relationships with customers and healthcare partners, or knew the interference was certain or substantially certain to occur as a result of their unlawful conduct. Upon information and belief, Sesame and Tripment, alone, in concert with one another, and in concert with Green Imaging, stole and exploited MDSave's protectable data, including by illegally scraping MDSave's website, to interfere with MDSave's prospective business relationships by reaching separate agreements with MDSave healthcare partners based on the stolen data, which had the result of harming MDSave through loss of customers and impairment to its relationships with healthcare partners.

176.    Sesame's and Tripment's acts of impermissibly accessing, copying, and stealing MDSave's data and exploiting it for their own commercial gain are independently tortious and unlawful acts.

177.    Sesame's and Tripment's interference with MDSave's prospective economic interests proximately caused MDSave injury, in that Sesame and Tripment have sold vouchers based on MDSave's data to customers who otherwise would have purchased vouchers from MDSave, and in that the market confusion created by Sesame's and Tripment's conduct has substantially impaired MDSave's efforts to partner with hospitals and healthcare providers.

178.    In addition, Defendant Sesame tortiously interfered with the prospective economic relationship between MDSave and outside investors. On information and belief, both MDSave and Sesame were seeking capital from the same potential investors. On information and belief, Sesame made false and misleading representations to those potential investor(s), such as stating that Sesame had a network of providers that included the providers that Sesame illegally derived from MDSave's website. Representations such as those, on information and belief, allowed Sesame to secure funding, investment, and support that it would not otherwise have received. On information and believe, had this not occurred, MDSave would have secured additional funding, investment and support, including from third parties who did in fact invest with Sesame in 2021.

179.    Sesame's and Tripment's interference and the concomitant loss of customers and partner providers have caused and will continue to cause MDSave injury, through reduced revenue and market share and lost investment opportunities.

180.    Defendants' conduct has caused and is causing irreparable injury to MDSave and, unless enjoined by this Court, will continue to do so.

## PRAYER FOR RELIEF

**WHEREFORE**, MDSave prays that this Court enter judgment in its favor on each and every claim for relief set forth above and award MDSave relief, including, but not limited to, an Order:

1.    Preliminarily and permanently enjoining Defendants, their officers, employees, agents, subsidiaries, representatives, distributors, dealers, members, affiliates, licensees, internet service providers, and all persons acting in concert or participation with them from accessing, copying, distributing, and/or otherwise exploiting MDSave's protectable intellectual property, data, technology, goodwill, and services, including through the promotion or sale of services based on the use of MDSave's protectable intellectual property, data, technology, goodwill, and services;

2.      Requiring Defendants to deliver to MDSave all copies of materials that infringe or violate any of MDSave's rights described herein or that was otherwise stolen from MDSave;

3.      Requiring Defendants to provide MDSave with an accounting of any and all sales of products or services that infringe or violate any of MDSave's rights described herein, including those sales of products or services made based off of data stolen from MDSave or as a result of Defendants falsely passing off MDSave's services as their own;

4.      Awarding MDSave its costs and attorneys' fees in this action pursuant to 15 U.S.C. § 1117(a) and/or 35 U.S.C. § 285, or as otherwise provided by law;

5.      For damages, in an amount up to the maximum provided by law, arising from Defendants' actions, as alleged herein; and

6.      Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, MDSave demands a trial by jury on all issues so triable.

Dated: December 21, 2021                    **WINSTON & STRAWN LLP**

*/s/ Dustin J. Edwards*
State Bar No. 24042335
1111 Louisiana Street, 25th Floor
Houston, Texas 77002
Telephone: 713-651-2600
Facsimile: 713-651-2700
Email: DEdwards@winston.com

*Of Counsel for Plaintiff*

WINSTON & STRAWN LLP
David P. Enzminger*
Michael A. Tomasulo*
333 S. Grand Avenue
Los Angeles, CA 90071

Telephone: 213-615-1700
Facsimile: 213-615-1750
Email: DEnzminger@winston.com
Email: MTomasulo@winston.com

HOLLOWELL PATENT GROUP LLC
Kelly J. Hollowell*
1804 Foxhound Lane
Virginia Beach, VA 23454
Telephone: 757-222-8022
Email: Kelly@hpgww.com

* *Pro hac vice application forthcoming*